RENDERED: APRIL 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0579-MR

GREGORY ALLEN WILLIS                          APPELLANT


                 APPEAL FROM PENDLETON CIRCUIT COURT
v.                  HONORABLE HEATHER FRYMAN, JUDGE
                       ACTION NO. 19-CI-00123


LAURA ELLEN RANKIN                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE: Gregory Allen Willis (Gregory) appeals from an order entered by the Pendleton Family Court on April 14, 2021, denying his motion to reconsider and from its findings of fact and conclusions of law of March 11, 2021. The issue on appeal is the characterization of certain property assigned to Laura Ellen Rankin (Laura) in the parties' dissolution proceeding. On appeal, Gregory argues that the

trial court erred by failing to characterize the Oak Hill Road property as marital and by failing to consider his nonmarital contribution to that property.

Gregory and Laura were married on November 23, 2016. They separated on July 18, 2019. Laura filed her verified petition for dissolution on July 30, 2019. At that time, she was seventy years of age and Greg was sixty-seven years of age. In her final verified disclosure statement filed March 13, 2020, Laura asserted her nonmarital interest in the real estate located at 1053 Oak Hill Road, Falmouth, Kentucky, supporting her claims by producing deeds to the three parcels that comprised that property. The matter was set for a three-hour final hearing on February 24, 2021.

Prior to that hearing, the parties resolved all of the issues between them except for the classification and assignment of nonmarital property. Laura testified that the residence and 20.45 acre lot was acquired first in 1993, followed by a 14.4072 acre tract in 2002, and a 40.0016 acre tract in 2009. All three tracts were purchased and paid for prior to the marriage.

The 40.0016 acre tract was then sold to a relative of Laura's for $60,000 after the marriage. Although Gregory admitted that he had agreed to the sale, he testified that he did not know what he was doing at the time as he was in ill health. The bulk of those proceeds was spent to pay the parties' living expenses. However, Laura testified that $28,000 of the proceeds was deposited into the

parties' joint checking account, along with the proceeds from the sale of Gregory's nonmarital real estate.

The remaining property was conveyed to the "Feltner and Willis Revocable Family Trust," listing Laura and Gregory as joint trustees. Laura testified that this transfer had been made solely for estate planning purposes. However, Gregory testified that it was done as part of a bargain between the couple.

He also testified that he contributed nonmarital funds to the improvement of the Oak Hill Road property in the form of fencing and gravel, an enclosed back porch, and side awnings. However, he was unable to produce receipts documenting these expenditures or showing any increase in value as the result of them. Laura's expert real estate appraiser testified that any such increase was nominal at best, since generally there is no correlation between the amount contributed and any added value to the home.

The trial court, relying on *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004), concluded that the transfer of the Oak Hill Road property to the trust did nothing to alter its "character" as a nonmarital asset. Further, as Greg failed to produce any evidence showing an increase in the home's value due to his expenditure of nonmarital funds, he had not demonstrated a nonmarital interest. Greg appealed the trial court's findings of fact and conclusions of law entered

March 11, 2021, as well as the trial court's order denying motion to reconsider entered on April 14, 2021.

As the Court stated in *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018):

> The inherent nature of domestic relations proceedings tends to breed hostility. Dissension is not uncommon, emotions are heightened, and the proffering of conflicting evidence is a virtual certainty. Trial courts are faced with the difficult task of weeding through emotionally-charged testimony and often slanted evidence to reach a fair and equitable result. Because of this, trial courts are afforded broad discretion in dividing marital property and marital debt. We will not disturb a trial court's rulings on these issues in the absence of an abuse of its discretion or clearly erroneous factual findings.

An abuse of discretion occurs where a court indulges in an arbitrary or capricious action. Findings of fact are clearly erroneous where they are not supported by "substantial evidence." *Mullins v. Picklesimer*, 317 S.W.3d 569, 581 (Ky. 2010). As noted in *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016), the Court's review on appeal is *de novo*.

KRS[1] 403.190(1) provides a blue print for the trial court with regard to the disposition of property in a dissolution proceeding. First, the trial court must characterize the parties' property as marital or nonmarital and then "assign each

---

[1] Kentucky Revised Statutes.

- 4 -

spouse's property to him." Then, the trial court must divide the remaining property, presumed to be "marital property" as defined in KRS 403.190(3). This presumption applies regardless of "whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property." *Id.* However, that presumption may be rebutted by a showing that the property in question was acquired pursuant to one of the exceptions provided in KRS 403.190(2)(a)-(e).

As the Court finds the case of *Sexton*, 125 S.W.3d 258, relied upon by the trial court to be dispositive, it will be discussed at some length. Jennifer (Appellant) and Larry (Appellee) Sexton were married May 26, 1984. At that time, Larry owned an apartment building valued at $165,000 with equity therein of $75,100. The amount of the mortgage was reduced during the parties' marriage by the use of rent payments and the application of gifts from Larry's parents.

Thereafter, in March of 1992, the parties conveyed the apartment building in exchange for a 1/6 interest in a real estate partnership. That interest was placed in the parties' joint names. Upon dissolution, the trial court found that at the time of the transfer, Larry's interest was 94% nonmarital, leaving a 6% marital interest for distribution. The court also found that the partnership interest was placed in the parties' joint names for the sole reason that they were married. The Kentucky Court of Appeals affirmed the findings of the trial court. The

Kentucky Supreme Court also affirmed the trial court's disposition of the partnership interest.

> The Court recognized that:
>
> Neither title nor the form in which property is held determines the parties' interests in the property; rather, "Kentucky courts have typically applied the 'source of funds' rule to characterize property or to determine parties' nonmarital and marital interests in such property." "The 'source of funds rule' simply means that the character of the property, *i.e.*, whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire the property.

*Id*. at 265 (footnotes and citations omitted).

While Jennifer argued that Larry failed to meet his burden of proving a nonmarital interest in partnership, the Court found that he had properly "traced" his interest in the nonmarital real estate into the partnership. The Court stated that:

> "Tracing" is defined as "[t]he process of tracking property's ownership or characteristics from the time of its origin to the present." In the context of tracing nonmarital property, "[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." The concept of tracing is judicially created and arises from KRS 403.190(3)'s presumption that all property acquired after the marriage is marital property unless shown to come within one of KRS 403.190(2)'s exceptions. A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof.

*Id.* at 266 (footnotes and citations omitted).

The Court then held that the trial court's findings with regard to the tracing of Larry's nonmarital interest into the 1/6 interest in the real estate partnership were supported by sufficient facts, including the testimony of Larry, his parents, and his accountant.

In this case, certified copies of recorded Deeds to the Oak Hill Road property were introduced during Laura's testimony. These records clearly reflect the nonmarital nature of the property.

The *Sexton* Court specifically rejected Jennifer's assertion that Kentucky should adopt the "doctrine of transmutation." Transmutation is alleged to occur when:

> separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying [this doctrine] is that dealing with property in [this] way[] creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Id.* at 270 (quoting 2 H. Clark, THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 16.2, at 185 (1987)).

The Court specifically rejected the doctrine of transmutation deeming it "inconsistent" with KRS 403.190 as well as the tracing principles and source of funds rule set forth above. The Court found that "transmutation through joint title would cause spouses not to trust each other. *Rather than placing property in their joint names for estate planning purposes, they would be careful that their nonmarital property remains solely in their individual names and does not transmute into marital property.*" *Id*. at 271 (emphasis added). Thus, this Court must reject Gregory's argument that, by placing the funds in question in both names, Laura's nonmarital properly was "transmuted" into marital property.

In cases where nonmarital property has been held to be converted into marital property, it has been held to be either the product of a gift to the marital estate or part of an agreement between the parties. In *Barber*, 505 S.W.3d 749, the Court found that although the property in question was clearly nonmarital in origin, applying the factors set forth in *O'Neill v. O'Neill*, 600 S.W.2d 493 (Ky. App. 1980), Barber did, in fact gift his nonmarital interest to Bradley.

The *O'Neill* factors are: (1) the source of the funds, (2) the intent of the donor, (3) the "status of the marriage relationship at the time of the transfer," and (4) "whether there was any valid agreement that the transferred property was to be excluded from the marital property." *Id*. at 495. The *Barber* Court found that the funds in question were gifts from his parents and, therefore, clearly

- 8 -

nonmarital. The Court then found that the evidence demonstrated that Barber had contributed his nonmarital funds to the construction of the residence, intending that it become "a marital asset that the couple owned jointly." *Id.* at 758. Indeed, the testimony reflected repeated assurances by Barber that Bradley would be the owner of a one-half interest in the home. The deed ultimately executed named the couple as joint tenants with right of survivorship. Although the testimony as to this factor was challenged, the Court recognized that issues as to the weight and credibility were for the trial court to resolve. The Court further found that there was no evidence that the "status" of the marriage was in any way questionable at the time of the transfer. The Court then addressed the final factor of the *O'Neill* test, the existence of an agreement as to the characterization of the property. Although this issue was hotly contested, the trial court found Bradley's testimony that Barber intended to make the property "half his and half hers," was more persuasive.

In this case, the trial court found that it was Laura's intention, in establishing the revocable trust, to provide for Gregory and his family in the event of her death. Indeed, this is precisely the scenario envisioned by the Court in *Sexton*, 125 S.W.3d at 271, and formed the basis for its rejection of the doctrine of transmutation. Laura also testified that the property was never transferred directly to Gregory, but directly into the revocable trust. Gregory, however, stated in his Answers to Interrogatories #6 that his claim that the property was marital was

based upon his belief that the property had been "deeded to a trust in both of our names in consideration of me putting my money and proceeds from the sale of my home into the joint bank account." At trial, he testified that he told Laura that she needed to be "all in" and that she could become so by adding his name to the title of her property. Laura testified that there was no such bargain between them. Based on this testimony, the trial court having judged the weight and credibility of the evidence concluded that there was no agreement as to the nature of the property.

However, Gregory has also argued that the proceeds from the sale of his nonmarital property were used for the improvement of 1053 Oak Hill Road. Laura agreed that awnings had been installed on the home for an expenditure of $4,750. However, she also testified that the back porch was partially completed prior to the improvements commenced by Gregory. She stated that no weather proofing was used to protect the structure. She concluded that the remaining improvements were performed by people who were not professional remodelers and she found that the work on the side room and deck was incomplete.

Gregory testified that he had fencing installed and gravel spread on the driveway. He estimated the cost for the gravel at $3,000. He also indicated that the cost of enclosing the back porch was approximately $15,000. He confirmed Laura's testimony as to the cost of the awnings. However, he presented

no documentation of the other expenditures since he was just "an old hippy" who didn't keep records. Further, he presented no testimony as to the value added to the property as the result of these improvements.

Laura, however, produced Angela Jacobs, a certified real estate appraiser, as an expert witness. She testified that due to the poor quality of the work performed, the improvements commenced by Gregory were merely nominal. The trial court rejected Gregory's claim of a nonmarital contribution and concluded that the Oak Hill Road property was entirely Laura's nonmarital property. Based upon Gregory's inability to properly trace the proceeds of the sale of his nonmarital property to improvements resulting in an increase in value to the Oak Hill Road property, the Court finds no error in the trial court's conclusion.

In *Jones v. Livesay*, 551 S.W.3d 47 (Ky. App. 2018), the trial court awarded husband a $45,000 nonmarital interest in a farm purchased after the parties' marriage, based upon "the amount of the increase in value of the real estate due to the work[.]" *Id.* at 53. Wife challenged husband's tracing of nonmarital assets as "unclear and incomplete." *Id.* On appeal, the Court found that husband's testimony as to his inheritance upon the death of his mother as the "source of the funds," and his production of bank records revealed that the inheritance had been deposited into the marital account in order to reimburse the costs of remodeling the farmhouse. *Id.* He testified that he knew that the inheritance would be

- 11 -

forthcoming and that the remodeling would not have been possible without it.  As a result, the Court found that the evidence presented was "sufficient to require a finding the increase in the value of the farm was due to Sam's expenditure of nonmarital funds and should be assigned to him." *Id.* at 53.  Since Gregory neither demonstrated the amount of his nonmarital investment nor the amount by which it increased the property, there was no error in the trial court's classification and distribution of property herein.

Accordingly, we affirm the findings of fact and conclusions of law of the Pendleton Circuit Court as well as its order denying reconsideration.


ALL CONCUR.


BRIEF FOR APPELLANT:

John Hayden
Dawn M. Gentry
Newport, Kentucky

BRIEF FOR APPELLEE:

Claude J. Victor
Florence, Kentucky